# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FAUX EFFECTS, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 8:08CV44 |
| ) | |
| vs. ) | (Related Case No. 06-14114-CIV, U.S. District Court for the Southern District of Florida) |
| ) | |
| KELLY S. KING INSTITUTE OF ) | |
| DECORATIVE FINISHES, INC., ) | ORDER |
| ) | |
| Defendant. ) | |

This matter is before the magistrate judge on the defendant's Motion to Quash Subpoena [1]. Plaintiff's Reply Brief was submitted on March 3, 2008, at which time the motion was deemed submitted. The court finds that defendant's motion should be denied.

## BACKGROUND

On April 27, 2006, Faux Effects, Inc. (FEI) filed suit[1] in the Southern District of Florida against the Kelly S. King Institute of Decorative Finishes, Inc. (King Institute). Briefly, the King Institute was a licensed distributor of products manufactured and supplied by FEI. Their agreement expired in 2004; however, FEI permitted the King Institute to operate as a distributor and supplied products to the King Institute while the parties continued to negotiate a new agreement. Their negotiations were futile. In its complaint, FEI alleged that King owed it $251,556.14 for products the King Institute ordered and received from FEI, but for which it did not pay.

---

[1] *Faux Effects International, Inc. v. Kelly S. King Institute of Decorative Finishes, Inc.*, Case No. 06-14114-CIV, Southern District of Florida.

The parties reached a settlement in principle after a court-ordered settlement conference held February 6, 2007.  On August 24, 2007, the Florida court entered final judgment in favor of FEI and against the King Institute in the amount of $251,556.14.

In conjunction with the motion now pending, FEI has filed evidence suggesting that the King Institute sold its assets to Omaha Painting Professionals, LLC for $2,000 on or about June 8, 2007 and then caused Omaha Painting Professionals to convey the assets to Modern Masters, Inc., a competitor of FEI, on or about September 6, 2007.  FEI alleges that the King Institute ultimately received $123,000 from Modern Masters for the assets it had conveyed to Omaha Painting Professionals for $2,000.

The documents attached as exhibits to Filing 9 show that on May 22, 2007, Omaha Painting Professionals, LLC extended an offer to Kelly S. King (in his capacity as the President and sole share holder of Fauxcademy, LLC, the King Institute, and the Kelly S. King Academy of Faux Painting & Decorative Finishing, Inc. (the "King Academy")) to purchase "all intellectual property and associated goodwill" associated with the three businesses for the aggregate sum of $2,000.  The offer was accepted by Mr. King on behalf of all three businesses on June 8, 2007.  On that date, the King Institute, for "one dollars [sic] ($1.00) and other good and valuable consideration," also assigned to OMAHA PAINTING PROFESSIONALS, LLC, all right title and interest in and to the trademark FAUXCADEMY OF DECORATIVE FINISH AWARDS[.]"

The Asset Purchase Agreement executed on September 6, 2007 by the King Academy (as seller), Kelly S. King (individually), and Modern Masters, Inc. (as buyer), provided that

Modern Masters would assume certain liabilities and purchase the assets of the King Academy for $123,000. To accomplish the transfer of assets, the agreement provided that the King Academy "shall cause Omaha Painting Professionals, LLC ("OPP") to sell, assign, transfer and convey to Buyer all of OPP's right, title and interest in and to" certain intellectual property, inventory, personal property and assumed contracts. A representative of OPP executed the assignment on September 6, 2007.

On January 11, 2008, FEI served its subpoena in aid of execution, commanding the production of 11 categories of documents. The King Institute contends the subpoena should be quashed because the subpoena "seeks information regarding the private affairs of Mr. King personally."[2] The King Institute further contends that compliance with the subpoena would subject it to undue burden, and that FEI's requests are overbroad and not sufficiently limited in time. Apparently, it is also the position of the King Institute that its records evidencing transactions with Kelly S. King need not be produced because Mr. King's personal debts were discharged in bankruptcy on November 14, 2007.

Under Fed. R. Civ. P. 69(a)(2) (2007),

> In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located.

---

[2]The King Institute objects to producing all documents reflecting transactions involving Kelly S. King in the last three years; all documents reflecting payments made to Kelly S. King in the last three years; all documents reflecting payments made to the Kelly S. King Academy of Faux Painting & Decorative Finishing, Inc. in the last three years; and all documents reflecting any interest that Kelly S. King has and/or has ever had in Omaha Painting Professionals, LLC.

The court finds that the categories of documents subpoenaed by FEI fall soundly within the scope of discovery allowed by Rule 69(a)(2). As Mr. King was the President and sole share holder of Fauxcademy, LLC, the King Institute, and the King Academy, his personal transactions with the King Institute and his interest in OPP are legitimate subjects of inquiry. Finally, the King Institute is a corporation with privileges and obligations separate and distinct from those of Kelly S. King, individually. Its obligations were not discharged in the King bankruptcy, and the King Institute is not somehow shielded from producing discovery regarding its dealings with Mr. King due to the discharge of Mr. King's personal debts.

For these reasons,

**IT IS ORDERED:**

1. Defendant's Motion to Quash Subpoena [1] is denied.

2. The Kelly S. King Institute of Decorative Finishes, Inc. shall fully comply with plaintiff's subpoena no later than **March 20, 2008**.

2. Pursuant to NECivR 72.2, a party may appeal this order by filing an "Appeal of Magistrate Judge's Order" within ten (10) business days after being served with the order. The party shall specifically state the order or portion thereof appealed from and the basis of the appeal. The appealing party shall file contemporaneously with the statement of appeal a brief setting forth the party's arguments that the magistrate judge's order is clearly erroneous or contrary to law. **The filing of a statement of appeal does not automatically stay the magistrate judge's order pending appeal.** Any motion for stay pending appeal shall be filed and presented first to the magistrate judge. If the magistrate judge denies the motion for stay, the party may address the motion to the assigned district judge. *See* NECivR 72.2(d).

**DATED March 5, 2008.**

                                    **BY THE COURT:**

                                    **s/ F.A. Gossett**
                                    **United States Magistrate Judge**